1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                 FOR THE EASTERN DISTRICT OF CALIFORNIA

9  GEORGE I. JOHNSON,

10              Plaintiff,                    No. CIV S-07-1826 MCE KJM P

11       vs.

12  D.K. SISTO, et al.,

13              Defendants.           <u>FINDINGS AND RECOMMENDATIONS</u>

14  _____/

15              Plaintiff is a state prison inmate proceeding pro se with an action alleging a

16  violation of his First Amendment right to practice his religion and his rights under the Religious

17  Land Use and Institutionalized Person Act (RLUIPA).  In the complaint, submitted under the

18  penalty of perjury, plaintiff alleges that defendant Cruz violated plaintiff's religious dietary needs

19  even though his file contained a number of chronos approving the provision of a religious diet.

20  He also alleges that only Kosher and vegetarian diets are available for religious needs at CSP-

21  Solano, yet the tenets of his Rastafarian faith require him to eat a vegan diet.  Compl. (Docket

22  No. 1-2) at 5.[1]  Defendants Ward and Hunter interviewed plaintiff about his complaints and

23  defendants Brown and Sisto denied his grievance about the matter.  These events occurred during

24  2006 and 2007.

25  _____

26        [1] Unless otherwise specified, the court refers to the page numbers assigned by its
    CM/ECF system.

1

1      Plaintiff also alleges that on November 9, 2006, defendant Boyden asked plaintiff

2  to remove his religious headwear.  Defendant Singh denied plaintiff's request to be allowed to

3  wear his religious headwear, while defendant Sisto allowed him to wear it in certain areas of the

4  prison and at certain times.  Id.

5      Defendants Cruz, Ward, Calvo (nee Hunter), Brown and Sisto have filed a motion

6  for summary judgment on the religious diet issue.  Plaintiff has filed a cross-motion for summary

7  judgment on both claims.

8  I.  Procedural Matters

9      Defendants object to plaintiff's cross-motion for summary judgment on several

10  grounds.  One is dispositive.  In the order resetting the schedule for the litigation, the court

11  directed that dispositive motions be filed by December 15, 2008.  See Docket No. 30.

12  Defendants timely filed their motion.  Plaintiff then requested and received three extensions of

13  time in which to file an opposition or objections to the motion.  Docket Nos. 34, 36, 37, 38, 40,

14  41.  He did not ask for additional time in which to file his own dispositive motion.  Because the

15  motion is not timely, the court will recommend that it be denied.  The court will, however,

16  construe the "motion" as an opposition to defendants' motion, given that it followed multiple

17  requests to file such an opposition.

18  II.  Summary Judgment Standards

19      Summary judgment is appropriate when it is demonstrated that there exists "no

20  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

21  matter of law."  Fed. R. Civ. P. 56(c).

22      Under summary judgment practice, the moving party

23      always bears the initial responsibility of informing the district court
       of the basis for its motion, and identifying those portions of "the
24      pleadings, depositions, answers to interrogatories, and admissions
       on file, together with the affidavits, if any," which it believes
25      demonstrate the absence of a genuine issue of material fact.

26  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

1   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

2   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

3   to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered,

4   after adequate time for discovery and upon motion, against a party who fails to make a showing

5   sufficient to establish the existence of an element essential to that party's case, and on which that

6   party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof

7   concerning an essential element of the nonmoving party's case necessarily renders all other facts

8   immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as

9   whatever is before the district court demonstrates that the standard for entry of summary

10  judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

11          If the moving party meets its initial responsibility, the burden then shifts to the

12  opposing party to establish that a genuine issue as to any material fact actually does exist. See

13  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

14  establish the existence of this factual dispute, the opposing party may not rely upon the

15  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

16  form of affidavits, and/or admissible discovery material, in support of its contention that the

17  dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

18  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

19  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

20  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

21  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

22  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

23  1436 (9th Cir. 1987).

24          In the endeavor to establish the existence of a factual dispute, the opposing party

25  need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

26  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

1   versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

2   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

3   genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

4   committee's note on 1963 amendments).

5           In resolving the summary judgment motion, the court examines the pleadings,

6   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

7   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

8   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

9   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

10  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

11  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

12  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

13  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

14  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

15  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

16  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

17          On January 30, 2008, the court advised plaintiff of the requirements for opposing

18  a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

19  F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.

20  Eikenberry, 849 F.2d 409 (9th Cir. 1988).

21  ///

22  ///

23  ///

24  ///

25  ///

26

III.  Facts

New regulations governing inmate participation in a religious diet program
became effective on April 24, 2006.  Defendants' Motion For Summary Judgment (DMSJ),
Ex. 3.  Under these provisions,

> (a) Any inmate who claims to require a religious diet shall be
> responsible for completing a CDCR Form 3030 . . ., Religious Diet
> Request . . ., and submitting it to the appropriate institution's
> Chaplain. . . .
>
> (b) The Chaplain shall:
>
> (1) Interview the inmate to explain the two religious diet options
> (including what the meals consist of) and determine the inmate's
> religious diet program eligibility.
>
> (2) When religious diet program eligibility is determined, explain
> the department's Religious Diet Program Agreement.
>
> (3) When applicable, have the inmate sign the CDCR Form 3030-
> A. . ., Religious Diet Program Agreement . . . .
>
> (4) Complete and distribute the CDCR Form 3030, Religious Diet
> Request and/or the CDCR Form 3030-A, Religious Diet Program
> Agreement, within two working days.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> (6) Enter pertinent information for each inmate approved to
> participate in a religious diet program onto a religious diet
> participant list within 24 hours of approval.  Maintain, update the
> list every 30 days, and provide the [Correctional Food Manager]
> CFM with a copy of the list of those inmates who have been
> determined eligible to receive a religious diet, and which diet they
> will receive.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> (9) Provide each approved inmate with a CDCR Form 3030-B,
> Religious Diet Card. . . .

Id. (copy of 15 Cal. Code Regs. § 3054.3); see also DMSJ, Ex. 2 (Department Operations
Manual (DOM) § 54080.14 (providing that inmate is responsible for completing request for
///

1  religious diet card and submitting it to the institution's chaplain; chaplain shall issue religious
2  diet card)); Opposition (Opp'n), Ex. A.
3          The California Department of Corrections and Rehabilitation (CDCR) currently
4  provides two religious diet choices: a Jewish Kosher diet and a religious vegetarian diet, which
5  includes dairy products, eggs and even fish, on occasion.  DMSJ, Exs. 2 & 3.
6          In 2006, defendant Sisto, the Warden, began to implement the changes in the
7  religious diet program, referenced above.  DMSJ, Declaration of D. Sisto (Sisto Decl.) ¶¶ 1, 5.
8  On September 14, 2006, he issued a memorandum outlining the process inmates had to follow to
9  receive religious diet cards.  Id. ¶ 6 & Ex. B.  Under this policy, an inmate would not be placed in
10  the religious diet program without signing a Religious Diet Program Agreement, CDCR 3030-A.
11  Id.  Even those inmates who were already participating in the religious diet program were
12  required to reapply for a religious diet card under the new program.  DMSJ, Declaration of N.
13  Calvo (Calvo Decl.) ¶ 3; Sisto Decl. ¶ 5.  The issuance of new religious diet cards was scheduled
14  for the week of October 16-20, 2006.  Sisto Decl., Ex. B.
15          On October 11, 2006, defendant Cruz was a supervising correctional cook at CSP-
16  Solano.  Declaration of A. Cruz (Cruz Decl.) ¶ 1.  On that day, he denied plaintiff his religious
17  diet, which had been approved in 2004.  Compl. at 4.  Cruz does not have the authority to
18  provide a religious diet to an inmate without a valid religious diet card, which must be approved
19  by the chaplain.  Cruz Decl. ¶¶ 5, 7.
20          Defendant Calvo (nee Hunter) is a supervising correctional cook at CSP-Solano.
21  Calvo Decl. ¶ 1.  On October 24, 2006, she interviewed plaintiff in connection with his grievance
22  about Cruz's refusal to provide plaintiff with his religious diet.  Calvo Decl. ¶ 3 & Ex. A at 5-7 [2];
23  Opp'n, Ex. B at 16.  Calvo told him she had contacted Imam Nasir on plaintiff's behalf, that the
24  Imam would meet with plaintiff for the purpose of issuing a new religious diet card, and the

25
26          [2] Once again, the court relies on the CM/ECF-assigned page numbers for pinpointing
internal pages of the exhibits.

1  culinary staff would not accommodate plaintiff until he received a new religious diet card.

2  Calvo Decl. ¶ 3.  Under CDCR regulations, Calvo did not have the authority to grant a religious

3  diet request without the chaplain's approval.  Calvo Decl. ¶¶ 4-6; 15 Cal. Code Regs. § 3054.3.

4         In 2006, defendant J. Ward was a correctional food manager at CSP-Solano and,

5  as part of his duties, reviewed inmate appeals related to the institution's food service.  DMSJ,

6  Declaration of J. Ward (Ward Decl.) ¶¶ 1-3.  In December 2006, Ward interviewed plaintiff in

7  connection with his appeal concerning his religious diet.  Id. ¶ 4 & Ex. A at 9-10.  He noted that,

8  at the time of the interview, plaintiff had not reapplied for his religious diet card under the new

9  regulations.  Id. ¶ 7.  Ward did not have the authority under these regulations to grant plaintiff's

10  request for a religious diet.  Id. ¶¶ 7-8.

11         Based in part on defendant Ward's interview of plaintiff, defendant Brown, who

12  was then the Associate Warden of Business Services at CSP-Solano, provided the first level

13  response to plaintiff's grievance requesting that he be given a religious diet.  DMSJ, Declaration

14  of C. Brown (Brown Decl.) ¶¶ 1, 4.  Brown denied the appeal because plaintiff had not requested

15  the interview with the chaplain, which was a necessary prerequisite to his receiving a religious

16  diet card under the new program, even for those who had previously been approved for religious

17  diets.  Brown Decl. ¶¶ 7, 9 & Ex. A at 9; 15 Cal. Code Regs. § 3054.3; DOM § 54080.14.

18  Under the regulations, Brown did not have the authority to grant plaintiff's request for a religious

19  diet.  Brown Decl. ¶¶ 11-12.

20         In January 2007, defendant Sisto reviewed plaintiff's grievance concerning his

21  religious diet; at that time, plaintiff had not been issued a new religious diet card, which was

22  required for continued participation in the program.  Sisto Decl. ¶ 8.  Even as warden, Sisto did

23  not have the authority to circumvent the procedures put in place for the approval of religious

24  diets.  Id. ¶ 9.

25  ///

26  ///

1  Plaintiff received his religious diet card in March 2007.  Compl. at 5.[3]  He is still

2  unable to receive the strict vegan diet required by his Rastafarian faith because the prison offers

3  only two religious diets: Kosher and ovo-lacto vegetarian.  Id.  None of the defendants in this

4  case, however, is involved in designing menus for inmates or has the authority to order

5  substitutions, except in cases of emergency.  Brown Decl. ¶¶ 2, 11; Calvo Decl. ¶ 4; Cruz Decl.

6  ¶¶ 2, 4; Sisto Decl. ¶ 7; Ward Decl. ¶¶ 2, 9.

7  IV.  Analysis

8  Although inmates' rights are restricted by the realities of incarceration, they do

9  retain the right to the free exercise of religion, tempered by legitimate penological concerns.

10  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  A religious claim has two components:

11  the claimant's belief must be sincerely held and it must be based on religious belief, not on

12  secular philosophical concerns.  See, e.g., Callahan v. Woods, 668 F.2d 679, 683 (9th Cir. 1981).

13  "Inmates also have the right to be provided with food sufficient to sustain them in good health

14  that satisfies the dietary laws of their religion."  McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir.

15  1987).

16  In order to state a claim for relief under RLUIPA, a plaintiff must allege that the

17  exercise of his religion has been "substantially burdened."  42 U.S.C. § 2000cc-1.  A "substantial

18  burden" on "religious exercise" must impose a significantly great restriction or onus upon such

19  exercise.  Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005).  Prison officials' refusal to

20  provide an inmate with a religious diet may constitute a substantial burden on the exercise of

21  religion.  Shakur v. Schriro, 514 F.3d 878, 888-89 (9th Cir. 2008).

22  Defendants do not question the sincerity of plaintiff's religious belief nor do they

23  allege that his request for a vegan diet is based on secular rather than religious belief.  Rather,

24  they allege they were not the cause of any harm to plaintiff because they lacked the authority to

25

26  [3] Because the complaint is signed under the penalty of perjury, the court relies on it as a declaration for summary judgment purposes.  See Compl. at 4.

8

1   provide him with a religious diet in the absence of a valid religious diet card.  DMSJ at 7-8.

2   They also allege they are entitled to qualified immunity.

3       A.  Defendants' Ability To Order A Religious Diet

4           To be liable for a civil rights violation, a state actor must act or fail to act in a

5   manner that deprives another of a constitutional right.  Leer v. Murphy, 844 F.2d 628, 632 (9th

6   Cir. 1988).

7           The Ninth Circuit explains:

8           A person deprives another of a constitutional right, within the
            meaning of section 1983, if he does an affirmative act, participates
9           in another's affirmative acts, or omits to perform an act which he is
            legally required to do that *causes* the deprivation of which [the
10          plaintiff complains].  The inquiry into causation must be
            individualized and focus on the duties and responsibilities of each
11          individual defendant whose acts or omissions are alleged to have
            caused a constitutional deprivation.

12

13  Id. at 633 (internal citation, quotation omitted; emphasis in original).  Accordingly, when a

14  defendant follows a policy over which he has no control or has not promulgated, he may not be

15  the cause of any constitutional violation.  See Estate of Brooks v. United States, 197 F.3d 1245,

16  1248 (9th Cir. 1999); see also Tinsley v. Pittari, 952 F.Supp. 384 (N.D. Tex. 1996) (prison

17  chaplain followed BOP policy on religious holidays; plaintiff failed to submit documentation for

18  religious exemption from policy; chaplain not liable).

19          Plaintiff has not challenged the requirement that he secure a new religious diet

20  card on either First Amendment or RLUIPA bases.  Compare Koger v. Bryan, 523 F.3d 789, 799

21  (7th Cir. 2008).  Nor has he presented any evidence suggesting that the defendants had the

22  discretion or ability to deviate from the requirements of the regulations and provide him a

23  religious diet in the absence of any effort on his part to secure a new diet card.  Thus, when

24  defendants Calvo (Hunter), Ward, Brown and Sisto denied plaintiff's grievance and denied him a

25  religious diet, they were acting in accordance with the new regulations and defendant Sisto's

26  implementing memorandum.

1    Plaintiff fares no better if he alleges that these defendants are liable because of

2    their resolution of his grievance:  Because inmates do not have a substantive right to prison

3    grievance procedures, the manner in which a grievance is processed does not give rise to a civil

4    rights claim.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Defendants Calvo, Ward,

5    Brown and Sisto are entitled to summary judgment.

6        The situation is different, however, with respect to defendant Cruz.  The evidence

7    is undisputed that Cruz denied plaintiff a religious-diet meal on October 11, 2006.  The evidence

8    is similarly undisputed that the new religious diet policy did not take effect until October 16,

9    2006, and new religious diet cards were to be issued during the week beginning October 16,

10   2006.  Plaintiff has averred that he had been approved to receive a religious diet before the

11   change in policy and that this refusal occurred before the new religious diet cards were to be

12   issued.  Compl. at 4.  Nothing in the new policies or in defendant Sisto's implementing

13   memorandum suggests that those who had been previously approved for religious diets could

14   have their approved meals withheld before the new cards were due to be issued.

15       B.  Lack Of A Vegan Diet

16       In his opposition to the motion for summary judgment and tangentially in his

17   complaint, plaintiff contends that his Rastafarian religion requires him to eat a vegan diet and

18   that the religious vegetarian diet includes eggs and dairy products.  Compl. at 5.  Plaintiff has

19   presented no evidence disputing the defendants' averments that they do not create the menus and

20   cannot order substitutions of menu items, nor has he named as defendants those in CDCR

21   responsible for establishing the system-wide religious diet plans.  Defendants are entitled to

22   summary judgment on this argument, to the extent it is deemed properly raised.

23   ///

24   ///

25   ///

26   ///

1    C.  Qualified Immunity[4]

2           Government officials performing discretionary functions generally are shielded

3    from liability for civil damages insofar as their conduct does not violate clearly established

4    statutory or constitutional rights of which a reasonable person would have known.  Harlow v.

5    Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether a governmental officer is immune

6    from suit based on the doctrine of qualified immunity, the court considers two questions.  One is,

7    taken in the light most favorable to the party asserting the injury, do the facts alleged show the

8    officer's conduct violated a constitutional right?  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A

9    negative answer ends the analysis, with qualified immunity protecting a defendant from liability.

10   Id.  If a constitutional violation occurred, a court must also inquire "whether the right was clearly

11   established."  Id.  "If the law did not put the [defendant] on notice that [his] conduct would be

12   clearly unlawful, summary judgment based on qualified immunity is appropriate."  Id. at 202.

13   The district court may decide the order of addressing these questions and answer only the second,

14   in accordance with fairness and efficiency and in light of the circumstances of a particular case.

15   Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808 (2009).

16          Given the particular circumstances of this case, this court sees no reason to depart

17   from the order of analysis originally presented in Saucier.  As noted above, plaintiff has made a

18   sufficient showing that Cruz violated plaintiff's constitutional and statutory rights by denying

19   him a religious diet meal on October 11, 2006.

20          Cruz relies on the fact that he could not approve plaintiff's request for a religious

21   diet in the absence of the chaplain's approval.  DMSJ at 11.  He does not argue he is entitled to

22

23          [4]  While no court in the Ninth Circuit has explicitly addressed whether qualified
24   immunity applies to RLUIPA cases, other courts have resolved RLUIPA claims on qualified
     immunity grounds.  See David v. Giurbino, 488 F.Supp. 2d 1048, 1057-59 (S.D. Cal. 2007);
25   Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006); Lovelace v. Lee, 472 F.3d 174, 196-97
     (4th Cir. 2006) (all applying qualified immunity analysis to a RLUIPA claim).  This court also
26   assumes the doctrine applies to this claim.

1  qualified immunity based on general uncertainty in the law over the necessity of providing

2  religious diets to prisoners.

3         As noted above, according to defendant Sisto's memorandum, new religious diet

4  cards were to be issued during the week of October 16, yet Cruz refused plaintiff a religious

5  vegetarian meal on October 11.  Cruz has pointed to nothing suggesting that those who had

6  previously been authorized to receive a religious diet would be removed from the program prior

7  to the implementation of the new procedures.  He is not entitled to qualified immunity.

8         D.  Punitive Damages

9         Defendant Cruz argues that plaintiff's prayer for punitive damages should be

10  dismissed because there is no evidence that Cruz acted with an evil motive.  DMSJ at 9.

11         Punitive damages may be appropriate when "defendant's conduct is shown to be

12  motivated by evil motive or intent, or when it involves reckless or callous indifference to the

13  federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  Plaintiff alleges

14  Cruz denied him a religious meal despite the prior approval, at a time before the implementation

15  of the new religious diet program.  On the current record, the court cannot say plaintiff will be

16  unable to prove his entitlement to punitive damages based on some form of indifference at least.

17         IT IS HEREBY RECOMMENDED that:

18         1.  Plaintiff's cross-motion for summary judgment (docket no. 42) be denied; and

19         2.  Defendants' motion for summary judgment (docket no. 32) be granted as to:

20                A.  Defendants Hunter (Calvo), Ward, Brown and Sisto insofar as the

21                     complaint alleges denial of a religious diet;

22                B.  Defendants Hunter (Calvo), Ward, Brown, Sisto and Cruz to the

23                     extent plaintiff alleges he does not receive a vegan diet; and

24  /////

25  /////

26  /////

3.  Defendants' motion for summary judgment (docket no. 32) be denied as to:

    A.  Defendant Cruz, insofar as the complaint alleges he denied plaintiff a religious meal on October 11, 2006; and

    B.  Defendants' request that the claim for punitive damages be stricken.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 1, 2009.

U.S. MAGISTRATE JUDGE

2 john1826.msj

13